## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MALISSA BROWN and<br>JAMES KNIGHT,<br><br>               Plaintiffs,<br>v.<br><br>DAVID STANLEY CHEVROLET, INC., and<br>BBVA COMPASS FINANCIAL CORP.,<br><br>               Defendants. | Case No. CIV-17-190-D |

### ORDER

Before the Court is Defendants' motion [Doc. No. 3] to dismiss this action[1] or, in the alternative, to compel arbitration. Plaintiffs timely responded in opposition [Doc. No. 8], and Defendants filed a reply [Doc. No. 9].

### BACKGROUND

On February 1, 2016, Plaintiffs purchased a 2008 Cadillac STS-V from David Stanley Chevrolet [Doc. No. 1-1 at ¶ 5]. As part of the purchase, Plaintiffs signed a Purchase Agreement, which contained a Dispute Resolution Clause [Doc. No. 3-1].[2] The Dispute Resolution Clause provides in pertinent part:

> This Dispute Resolution Clause applies to any controversy, claim or dispute between the Purchaser and the Dealer arising out of, or related, to this sale or transaction, including, but not limited to, any and all issues or disputes arising

---

[1]Defendants move for dismissal under FED. R. CIV. P. 12(b)(1) and 12(b)(6), but assert no specific arguments in support of dismissal on such grounds. The true focus of Defendants' motion is a request to compel arbitration.

[2]Plaintiffs also separately signed the Dispute Resolution Clause. It appeared conspicuously on the front of the Purchase Agreement in red typeface. *See* Defs.' Mot. to Dismiss, Ex.1 [Doc. No. 3-1 at 1].

> as a result of this sale or transaction, whether said issues arise prior to, during or subsequent to the sale or attempted sale of a vehicle and whether said sale or attempted sale is a cash sale or is based upon financing or extended credit, or arises as a result of any financing contract, agreement or sales document related to the sale or attempted sale of a vehicle. The Purchaser and Dealer agree that all matters addressed within this Clause shall be submitted to binding arbitration, with an Arbitration Service or Arbitrator of the parties' choosing, pursuant to the Federal Arbitration Act, Title 9 U.S.C. § 1, et seq. The parties agree and understand that all disputes arising under case law, statutory law, and all other laws, including, but not limited to, all contract, tort and property disputes, including any claim regarding the use, misuse and/or disclosure of any information or documentation, including, but not limited to, personal or financial information obtained by the Dealer from the Purchaser, or about the Purchaser, which may arise from the sale relationship or otherwise during the sale, or at any time in the future, will be subject to binding arbitration in accord with this Contract.

[Doc. No. 3-1 at 1]. Additionally, as part of the sale, Plaintiffs executed a Retail Installment Sale Contract ("RISC") [Doc. No. 3-2 at 10], which David Stanley Chevrolet later assigned to Compass Bank[3]. Plaintiffs allege that about one month after the sale, David Stanley Chevrolet demanded an additional payment of $1,500.00 [Doc. No. 1-1 at ¶ 13]. Plaintiffs also allege that David Stanley Chevrolet failed to pay off the loan on the trade-in vehicle and sold it to a third party [Doc. No 1-1 at ¶ 16]. Compass Bank allegedly repossessed the trade-in vehicle, sold it and demanded Plaintiffs pay the deficiency balance [Doc. No. 1-1 at ¶ 21].

On February 1, 2017, Plaintiffs filed the instant action in the District Court of Oklahoma County [Doc. 1-1], asserting 13 causes of action. On February 22, 2017, Defendants removed this action to federal court [Doc. No. 1]. Defendants now move the

---

[3]Defendants assert in their motion that the correct entity name for Defendant BBVA Compass Financial Corporation is Compass Bank. Thus, the Court refers to it in that way.

Court to enter an order compelling arbitration pursuant to the Federal Arbitration Act (FAA) and the Dispute Resolution Clause in the Purchase Agreement [Doc. No. 3].

## DISCUSSION

Defendants assert that Plaintiffs entered into a valid and enforceable agreement to arbitrate all claims arising from their purchase of the Cadillac STS-V. Plaintiffs, however, contend that arbitration is not appropriate. Specifically, Plaintiffs assert: (1) the RISC is the only contract between the parties as a result of the merger doctrine, and it does not contain an arbitration clause; (2) there is no valid arbitration agreement as there was no meeting of the minds and the two arbitration clauses conflict; (3) Compass Bank's Dealer Agreement precludes David Stanley Chevrolet from adding or altering the RISC, even to include an arbitration clause; and (4) David Stanley Chevrolet's agent fraudulently induced Plaintiffs into signing the Dispute Resolution Clause by falsely representing the contents of the Purchase Agreement, including the arbitration clause.

### A. Whether the Dispute Resolution Clause in the Purchase Agreement is included in the parties' final contract

Plaintiffs contend that the Dispute Resolution Clause is unenforceable because the RISC contains a merger clause. Defendants assert that since the Purchase Agreement and the RISC were executed as one transaction, they must be construed together.[4] "It is the

---

[4]The parties do not address the fact that the Spot Delivery Agreement, also signed by the parties at the same time, incorporates by reference the RISC, the Purchase Agreement and the Agreement to Arbitrate contained therein. *See* [Doc. No. 8-3]. The Spot Delivery Agreement specifically states, "This Spot Delivery Agreement and all written contracts relating to this transaction, including, but not limited to, the Purchase Agreement, Agreement to Arbitrate therein, and the Retail Installment Sales Contract, are between the same parties, and made as part of substantially the same transaction and shall be taken

3

general rule that instruments executed at the same time, and for the same purpose, and in the course of the same transaction, are, in the eye of the law, one instrument, and will be read and construed together, as if they were as much one in form as they are in substance." *Mid-Continent Life Ins. Co. v. Goforth*, 143 P.2d 154, 157 (Okla. 1943); *see also F.D.I.C. v. Hennessee*, 966 F.2d 534, 537 (10th Cir. 1992) ("Oklahoma adheres to the widely-accepted rule that when several contracts relating to the same matter are made by the parties as parts of one transaction, all of the instruments should be construed together."). Moreover, it is not necessary that the instruments refer in express terms to one another, if they are part of a single transaction. *Morgan v. Griffith Realty Co.*, 192 F.2d 597, 599 (10th Cir. 1951).

David Stanley Chevrolet and Plaintiffs executed the Purchase Agreement, the Spot Delivery Agreement and the RISC at the same time as part of one transaction – Plaintiffs' purchase of the Cadillac STS-V on February 1, 2016. The Purchase Agreement contained the terms of the sale, including the Dispute Resolution Clause, while the RISC contained the credit terms. Further, the Dispute Resolution Clause specifically provides that it applies to disputes concerning sales "based upon financing or extended credit" or disputes that arise "as a result of any financing contract, agreement or sales document related to the sale

---

together and read as one document setting forth the terms of the parties['] agreement." [Doc. No. 8-3]. A court "must interpret a contract so as to give effect to the intent of the parties at the time the contract was formed." *Mercury Inv. Co. v. F.W. Woolworth Co.,* 706 P.2d 523, 529 (Okla. 1985); *see also Scungio v. Scungio*, 291 P.3d 616, 623 (Okla. 2012) ("A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful."). The Court finds that the language of the Spot Delivery Agreement lends credence to Defendants' arguments.

or attempted sale of the vehicle." [Doc. No. 3-1]. The Spot Delivery Agreement provides that it is "executed as a prelude to an exchange of ownership of the vehicle[] described herein; subject to Dealer finding a lending institution willing to purchase the Retail Installment Sales Contract executed between the parties hereto on the same terms and conditions as those set forth more particularly in the Purchase Agreement and Retail Installment Sales Contract." [Doc. No. 8-3].

Plaintiffs do not dispute that they signed all three documents at the same time. Plaintiffs also do not dispute the fact that the Purchase Agreement itself explicitly incorporates the RISC.[5] Rather, Plaintiffs contend that the RISC must incorporate the Purchase Agreement pursuant to the Oklahoma Supreme Court's ruling in *Walker*. *See Walker v. BuildDirect.Com Technologies, Inc.*, 349 P.3d 549 (Okla. 2015). *Walker*, which is factually distinguishable, concerned incorporation "of an extrinsic document

---

[5]Page 1 of the Purchase Agreement provides that "if financing is arranged through Dealer, this Purchase is subject to … any *Retail Installment Sales Contract* executed herewith by a qualified lender or other financial institution." [Doc. No. 3-1 at 1] (emphasis added). Moreover, Paragraph 12 of the Purchase Agreement provides:

> This Purchase Agreement and all written contracts relating to the same transaction as evidenced on the front of this Purchase Agreement, between the same parties, and made as part of substantially the same transaction as evidenced on the front of this Purchase Agreement shall be taken together and read as one document setting forth the terms of the parties['] agreement. To the extent that any of the terms among the various documents are inconsistent, the financing agreement shall supersede any directly conflicting rights, language or terms.

[Doc. No. 3-1 at 2, ¶ 12].

warehoused in cyberspace" that did not contain the parties' signature. *Id.* at 553. Limiting its holding to the particular facts of that case, the court in *Walker* found that no reasonable person under those circumstances would have thought the online "Terms of Sale" were part of the parties' agreement. *Id*. at 554.

Although the facts are different, the rationale in *Walker* supports Defendants' argument of incorporation. In *Walker*, the plaintiffs purchased hardwood flooring from the defendant. The defendant e-mailed a two-page written contract, which the plaintiffs signed, dated and returned to the defendant. *Id.* at 551. The contract described the type, amount, and price of the flooring purchased by the Walkers and included 14 bullet points setting forth additional terms. *Id.* The sixth bullet point provided that "All orders are subject to [defendant's] 'Terms of Sale.'" *Id.* The "Terms of Sale" was a document on the defendant's website, which contained 15 numbered paragraphs, including an arbitration clause. *Id*. at 552.

BuildDirect filed a motion in district court seeking to compel arbitration pursuant to the arbitration clause in the "Terms of Sale." The Walkers responded that they were unaware of the online document and that it was not adequately referenced in the contract they signed. *Id.* The district court initially denied BuildDirect's motion, explaining that the contract was ambiguous and that it could not say as a matter of law that the contract incorporated the "Terms of Sale." *Id.* BuildDirect filed an interlocutory appeal, and the Tenth Circuit certified a question[6] to the Oklahoma Supreme Court. *Id.*

---

[6]Certified question: Does a written consumer contract for the sale of goods incorporate by reference a separate document entitled "Terms of Sale" available on the seller's website,

6

In analyzing this question, the Oklahoma Supreme Court reviewed Oklahoma contract law concerning the doctrine of incorporation. The court noted that a "chief consideration of incorporation is whether the party to be bound had reasonable notice of and assented to the terms to be incorporated." *Id.* at 553 (*citing One Beacon Ins. Co. v. Crowley Marine Services, Inc.*, 648 F.3d 258, 268 (5th Cir. 2011). Notice of incorporated terms is reasonable when a "reasonably prudent person should have seen them." *Walker*, 349 P.3d at 553. "A party's failure to read duly incorporated terms will not excuse the obligation to be bound." *Id.* (*citing McDonald v. McKinney Nursery Co.*, 143 P. 191 (Okla. 1914). "Neither physical attachment nor magic words are necessary." *Walker*, 349 P.3d at 553. Applying these principles, the court concluded the "Terms of Sale" were not properly incorporated into the parties' contract because the Walkers "neither assented to nor had notice of the additional online terms." *Id.* at 554.

Unlike the Walkers, the arbitration clause in the Purchase Agreement was available to Plaintiffs on the date they signed the Purchase Agreement and was presented on the date of execution. In fact, it appeared conspicuously on the front of the Purchase Agreement in red typeface. [Doc. No. 3-1 at 1]. No terms of Plaintiffs' agreement with Defendants were contained on a website. Rather, Plaintiffs admittedly signed the Dispute Resolution Clause in the middle of the Purchase Agreement. Pls.' Resp. [Doc. No. 8 at ¶¶ 5, 18]. Accordingly, *Walker* does not preclude enforcement of Plaintiffs' agreement to arbitrate here.

---

when the contract states that it is "subject to" the seller's "Terms of Sale" but does not specifically reference the website? *Walker,* 349 P.3d at 551.

"Moreover, under Oklahoma law, the RISC can't be read in a vacuum." *Mooneyham v. BRSI, LLC*, 682 Fed. Appx. 655, 660 (10th Cir. 2017) (unpublished).[7] "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." *Id.* (*quoting* OKLA. STAT. tit. 15, § 158). "[W]here two written instruments refer to the same subject matter and on their face show that each was executed as a means of carrying out the intent of the other, both should be construed as one contract." *Strickland v. Am. Bakery and Confectionery Workers Union and Indus. Nat'l Welfare Fund*, 527 P.2d 10, 13 (Okla. 1974).

By its terms, the Spot Delivery Agreement "plainly operates alongside the RISC." *Mooneyham*, 682 Fed. Appx. at 660; *see also* [Doc. No. 8-3]. It incorporates by reference the RISC, the Purchase Agreement and the Agreement to Arbitrate therein. *See Id.* "Although the RISC doesn't reciprocate this reference, that omission doesn't override the intent that [the parties] clearly expressed by executing the agreements together." *Mooneyham*, 682 Fed. Appx. at 660-663 (distinguishing *Walker* because the plaintiff had notice of the arbitration agreement since he signed it and concluding that the arbitration agreement applied to the plaintiff's claims). Accordingly, the Court finds that the Purchase Agreement, the RISC and the Spot Delivery Agreement should all be construed together and that the Dispute Resolution Clause is not superseded by the RISC.

---

[7] Unpublished opinion cited pursuant to FED. R. APP. P. 32.1(a) and 10TH CIR. R. 32.1.

### B. Whether the parties entered into a valid arbitration agreement

The FAA provides that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Before the FAA can be invoked, the existence of an agreement to arbitrate must be established. *Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997). When deciding whether the parties agreed to arbitrate a matter, "courts generally … should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Avedon Engineering, Inc.*, 126 F.3d at 1287 (federal courts "look to state law principles of contract formation to tell us whether an agreement to arbitrate has been reached").

Plaintiffs contend that conflicting arbitration provisions in the Purchase Agreement and the Spot Delivery Agreement render the obligation to arbitrate unenforceable. Defendants maintain that the non-mandatory arbitration clause in the Spot Delivery Agreement is inapplicable and that the two clauses are consistent. "The primary goal of contract interpretation is to determine and give effect to the intention of the parties at the time the contract was made." *May v. Mid-Century Ins. Co.*, 151 P.3d 132, 140 (Okla. 2006). "A contract should receive a construction that makes it reasonable, lawful, definite and capable of being carried into effect if it can be done without violating the intent of the parties." *Id. See also* OKLA. STAT. tit. 15, § 159.

9

The Spot Delivery Agreement contains a non-mandatory dispute resolution provision, which states, "any disputes about this agreement *may* be brought to the appropriate Motor Vehicle Commission under their respective complaint and/or arbitration procedures." [Doc. No. 8-3] (emphasis added). Oklahoma's Used Motor Vehicle and Parts Commission ("UMVC") regulates the sale of used motor vehicles in Oklahoma. OKLA. STAT. tit. 47, § 582(E)(2)(a). The UMVC is authorized "to serve as a dispute resolution panel for binding arbitration … in contract controversies between licensed used motor vehicle dealers … and their consumers when, *by mutual written agreement executed after the dispute between the parties has arisen*, both parties have agreed to use the Commission as their arbitration panel for contract disputes." OKLA. STAT. tit. 47, § 582(E)(2)(f) (emphasis added). Thus, the UMVC is authorized to arbitrate disputes related to the sale of used motor vehicles, but only if both parties enter into a written agreement to submit the dispute to the UMVC after a dispute has arisen. *Id.* The parties in this case did not enter into any such agreement; thus, the dispute resolution clause in the Spot Delivery Agreement is inapplicable.

Further, the two clauses do not conflict. The Dispute Resolution Clause in the Purchase Agreement mandates that all disputes be submitted to binding arbitration, with certain exceptions. The clause in the Spot Delivery Agreement merely provides a specific forum for binding arbitration before the UMVC, if the parties elect in writing to use the UMVC after a dispute arises. There is nothing in the statutes or regulations governing the sale of used motor vehicles that prevents the parties from entering into an agreement to submit disputes regarding the sale to binding arbitration, as the parties did in this case.

Additionally, the Spot Delivery Agreement incorporates by reference the Purchase Agreement and the Agreement to Arbitrate therein, which Plaintiffs separately signed. [Doc. Nos. 3-1, 8-3].

Plaintiffs' reliance on *Bellman* is misplaced. Pls.' Resp. [Doc. No. 8 at 10-11]; *see also Bellman v. i3Carbon, LLC*, 563 Fed. Appx. 608 (10th Cir. 2014) (unpublished).[8] In relation to their possible investment in i3Carbon, the defendants provided Mr. Bellman and Mr. Samuelson with an Investment Binder that contained about 200 pages of documents, including an unsigned Operating Agreement. *Bellman*, 563 Fed. Appx. at 609. The Operating Agreement contained an arbitration clause. *Id*. at 610. Also included in the Investment Binder was a Subscription Agreement, which contained a forum selection provision. The parties signed the Subscription Agreement. *Id*. Bellman and Samuelson later filed a securities fraud suit in the United States District Court for the District of Colorado based upon alleged misstatements and omissions made at the time of their investment. *Id.* at 609-610. The defendants moved to compel arbitration based on the arbitration clause in the unsigned Operating Agreement. *Id*. at 611. The district court denied the defendants' motion, and the defendants timely appealed. *Id.*

Applying Colorado state law principles of contract, the Tenth Circuit concluded that the defendants "failed to show that the 'conduct of the parties … evidence[d] a mutual intention to contract with each other.'" *Id*. at 613. The defendants argued that Bellman and Samuelson manifested their acceptance of the Operating Agreement and the arbitration

---

[8]Unpublished opinion cited pursuant to FED. R. APP. P. 32.1(a) and 10TH CIR. R. 32.1.

provision when they invested in i3Carbon following receipt of the 200-page Investment Binder. *Id*. at 614. The court disagreed, finding that "the Operating Agreement included in the Investment Binder did not have Plaintiffs' names on it and did not indicate that Plaintiffs were expected to sign it." *Id.* The court also concluded that Bellman and Samuelson had submitted "uncontroverted evidence" that the defendants never requested that they sign the Operating Agreement or agree to its provisions, and that Bellman and Samuelson, in fact, did not sign the Operating Agreement. *Id.* "While the Operating Agreement provided for arbitration, the Subscription Agreement did not. In our view, the documents in the Investment Binder do not demonstrate a meeting of the minds regarding arbitration." *Id.*

Here, however, it is undisputed that Plaintiffs signed all three documents – the Purchase Agreement, the Spot Delivery Agreement and the RISC. Moreover, Plaintiffs separately executed the red-typeface Dispute Resolution Clause contained in the Purchase Agreement. The language in the Spot Delivery Agreement that all three documents "shall be taken together and read as one document setting forth the terms of the parties['] agreement" evidences the parties' intent was to construe all three documents together. [Doc. No. 8-3]. Accordingly, the Court finds that there was a valid agreement to arbitrate.

### C. Whether Compass Bank's Dealer Agreement with David Stanley Chevrolet precludes arbitration

Plaintiffs contend that under the terms of Compass Bank's Dealer Agreement, David Stanley Chevrolet cannot alter or add additional terms from those in the RISC. Defendants, on the other hand, assert that the Compass Bank Dealer Agreement does not

12

preclude arbitration. Having carefully reviewed the parties' submissions, and particularly the Dealer Agreement, the Court finds that Compass Bank's Dealer Agreement does not preclude arbitration either expressly or by implication. Further, the Court finds the Dispute Resolution Clause in the Purchase Agreement does not contradict any terms of the RISC.

### D. Whether David Stanley Chevrolet's agent fraudulently induced Plaintiffs into signing the Purchase Agreement and the Dispute Resolution Clause

Plaintiffs assert that they were fraudulently induced into signing the Dispute Resolution Clause because David Stanley Chevrolet's agent told them the purpose of the Purchase Agreement was to verify the trade-in vehicle, the purchase vehicle, and the price and did not tell them they were agreeing to arbitration by signing it. Defendants contend that (1) they were not obligated under the law to explain an arbitration agreement and (2) since Plaintiffs' allegations of fraud relate to the contract as a whole, Plaintiffs' fraudulent inducement claim must be submitted to arbitration.

The FAA places arbitration agreements on equal ground with other contracts by requiring courts to enforce them according to their terms. *See Rent-A-Center, West, Inc.*, 561 U.S. at 67. However, like other contracts, "they may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.* at 68 (*quoting Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). There are two types of validity challenges to arbitration agreements under Section 2 of the FAA. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co*, 388 U.S. 395, 403-404 (1967); *Rent-A-Center, West, Inc.*, 561 U.S. at 70. The first type challenges specifically the validity of the agreement to

13

arbitrate. *See Id.* The second "challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye Check Cashing, Inc.*, 546 U.S. at 444. Under the FAA and the doctrine of severability, "if the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the 'making' of the agreement to arbitrate – the federal court may proceed to adjudicate it." *See Prima Paint Corp.,* 388 U.S. at 403. However, where a party claims fraud in the inducement of the contract as a whole, the issue is left for arbitration. *See Id.* at 404; *see also Buckeye Check Cashing, Inc.*, 546 U.S. at 445; *Telum, Inc. v. E.F. Hutton Credit Corp.,* 859 F.2d 835, 837-838 (10th Cir. 1988).

Again, there is no dispute that Plaintiffs signed the Purchase Agreement and the Dispute Resolution Clause. Here, the Dispute Resolution Clause expressly provides that "The Purchaser and Dealer agree that all matters addressed within this Clause shall be submitted to binding arbitration … pursuant to the Federal Arbitration Act, Title 9 U.S.C. § 1 *et seq*." [Doc. No. 3-1 at 1].

Despite Plaintiffs' attempt to challenge the arbitration clause itself [Doc. No. 8], the Court finds there are no allegations in the Petition challenging the validity or enforceability of the arbitration clause itself on the grounds of fraud. [Doc. No. 1-1]. *See Riley v. Kingsley Underwriting Agencies, Ltd., et al.,* 969 F.2d 953, 960 (10th Cir. 1992) (A plaintiff attempting to avoid an arbitration clause based on fraud must plead fraud with the specificity required by FED. R. CIV. P. 9(b).). Plaintiffs have not asserted a claim for rescission of the arbitration agreement. Moreover, Plaintiffs admit that the Dispute

14

Resolution Clause in the Purchase Agreement provides for binding arbitration pursuant to the FAA.  *See* Pls.' Resp. at ¶ 3 [Doc. No. 8].

Here, Plaintiffs' argument attacks the entire transaction, "rather than just the arbitration provisions, because the argument is based on language outside those provisions." *See e.g., In re Cox Enterprises, Inc. Set-Top Cable Television Box Antitrust Litig. v. Cox Communications, Inc.*, 835 F.3d 1195, 1211 (10th Cir. 2016) (held that the plaintiffs' challenge was "to the entire agreement, because the arbitration provision would be unenforceable only if the entire agreement is unenforceable."). In particular, Plaintiffs rely on a merger clause in the RISC and a separate arbitration clause in the Spot Delivery Agreement. Citing to *Croslin*, Plaintiffs alternatively argue that David Stanley Chevrolet's agent was obligated to explain the terms of the Purchase Agreement, including the Dispute Resolution Clause. *Croslin v. Enerlex, Inc.*, 308 P.3d 1041 (Okla. 2013) (discusses actual fraud and constructive fraud).

A review of the Petition and the Affidavit attached to Plaintiffs' brief in opposition of the instant motion further support the position that Plaintiffs' arguments go to the validity of their sales agreement as a whole, rather than the arbitration provisions specifically. Plaintiffs contend that David Stanley Chevrolet's agent kept his hand on each document he presented them for signature and pointed where they should sign. *See* Ms. Brown's Aff. [Doc. No. 8-2 at ¶ 8]. Plaintiffs further contend that at no time did the agent remove his hand from any of the documents as they were presented. *Id.* at ¶ 9. Plaintiffs also contend that they were not given the opportunity to read any of the documents as they were immediately withdrawn after they were signed. *Id.* at ¶ 10. Plaintiffs allege that there

15

were suggestive circumstances surrounding the signing of all three documents – the RISC, the Purchase Agreement and the Spot Delivery Agreement.  Such assertions present issues for the arbitrator to decide.

Having reviewed the parties' submissions, the Court finds Plaintiffs have not asserted facts that suggest they were fraudulently induced into signing the Dispute Resolution Clause in particular. Specifically, the Court finds that the Dispute Resolution Clause was clearly visible to Plaintiffs on the front of the Purchase Agreement in red typeface and that while they may not have chosen to read the clause, Plaintiffs signed it. The record does not reflect that David Stanley Chevrolet's agent made any specific statements regarding the Dispute Resolution Clause.  Although the agent stated what the main purpose of the Purchase Agreement was, those statements were generally accurate and, under the circumstances, did not give rise to any duty to speak regarding the Dispute Resolution Clause.  Nothing asserted by Plaintiffs creates a dispute regarding whether assent to the Dispute Resolution Clause in particular was fraudulently induced.

Nonetheless, the Court finds that Plaintiffs' arguments relate to fraud in the inducement of the contract as a whole.  Accordingly, an arbitrator and not the Court should consider Plaintiffs' claims of fraud.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED.  The motion to compel arbitration and stay this action is GRANTED, and this action is stayed and will be administratively closed pending the outcome of the arbitration proceedings.  The parties shall jointly notify the Court of the completion of the arbitration proceedings within 14

days thereof.  If a party seeks to reopen this action for any appropriate purpose, a motion to reopen must be filed no later than seven days after the filing of the notice to the Court.

IT IS SO ORDERED this **17th** day of November 2017.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE